v. Ronald L. Wells Appellant by Charles Sheetal Mr. Sheetal Thank you, Your Honor. It is a court of counsel. My name is Charles Sheetal. I'm with the Office of the State Appellate Defender in Springfield, and I'm here on behalf of the Petitioner Appellant, Mr. Wells.         Mr. Sheetal. Mr. Sheetal. Mr. Sheetal. Mr. Sheetal. Mr. Sheetal. I'll start this whole without an evidentiary hearing of a petition for postconviction relief, but the procedural circumstances are unusual to the point where I believe I have to first address whether this court, in fact, can hear my case, whether it has jurisdiction. The State, in response to my opening brief, raised a point about the defendant's motion to reconsider the denial or the dismissal of the postconviction petition. That order of dismissal was on August the 13th of, I believe it was 2007, and the motion to reconsider was postmarked on September 13th of 2007, which the State pointed out meant that 31 days rather than 30 days had elapsed, and so the motion they argued was untimely. Therefore, when the court finally ruled on the motion to reconsider several months later and then advised the defendant of his appellate rights, in fact, he at that point had no right to appeal because any notice of appeal would have been untimely. I filed a reply brief and an argument responding to that argued by the State, and in November of last year, this court ordered that the cause be remanded for an evidentiary hearing on this point in the circuit court of Cary County, and the record of that proceeding has been supplemented to the record of the postconviction matter. In fact, I will submit that the record of proceedings shows that the circuit judge, Judge Borden, was correct when he found that Mr. Wells had placed his pleading in the prison mail in a timely fashion, and therefore it had been timely filed. This ruling was the result of the judge hearing testimony from Mr. Wells and four employees of Pontiac Correctional Center and considering exhibits on the matter. I think it is noteworthy that neither in the circuit court or in this court has the State argued that, in fact, there was not a timely mailing, that there was not a timely placement of the document in the prison mail. Their argument is that regardless of what happened in the prison in terms of when Mr. Wells placed his pleading in the mail, he did not comply with Supreme Court Rule 12b-3 because the pleading was not accompanied by a notarized proof of service, and they rely on the Second District's decision in People v. Lugo. It is my contention here, first of all, that there is no question that Mr. Wells proved to the satisfaction of the circuit court by sworn testimony in open court, which was not pre-budded, not contradicted by the State, and the judge found that the envelope in question had been delivered to the prison law library on September 12th, which was within 30 days, and so that was proper mailing, even though it wasn't actually put in the U.S. mail until the next day, and that's the way the prison mail system operates. And the judge found that that was conclusive evidence of timely mailing. Now, I would submit that that should be enough to show beyond any question that this court does have jurisdiction, and I think the, as I understand the State's position, it's that it doesn't matter what was proven in open court, the defendant didn't comply with the Supreme Court Rule because there's no notarized proof of service. Now, on that point, the judge heard evidence about the policy of the Department of Corrections, the policy of Pontiac Correctional Center at the time in question with regard to whether they provided notaries to prisoners who were filing legal pleadings, and the evidence showed without question that they were not, as a matter of policy, providing notaries to petitioners, to indigent, imprisoned petitioners in that situation, and the judge here made a finding, and I quote, it is clear it was virtually impossible for him, that's Mr. Wells, to get a notary on that document. He used a form that was provided that had what's called an affirmation or an affidavit of affirmation, which is what the prison was providing prisoners in this case, in compliance with whatever filing rules there were, and the evidence at the hearing included the fact that some months before he filed this particular pleading, Mr. Wells had tried to, had filed a notice of appeal with this court in a civil matter, and it had been dismissed because the notice of appeal was not notarized, there was no proof that it had been timely made, and Mr. Wells filed a grievance on this, and in his grievance, he said, and this is part of, this is one of the exhibits, he said that I complain about not being provided a notary, I wasn't provided a notary, I'm asking that this facility give me an affidavit stating I was refused a notary, and start notarizing in the future, and this is several months before the filing in this case. Well, the prison's response to this grievance was to say the affidavit of affirmation has the same effect as a document being notarized, so they denied this grievance, and that is the basis for, and in the testimony that was solicited at this hearing, it was clear, I believe, that the prison was not providing notaries to people at this time because of this policy, and they, there was testimony that they later changed the policy in light of cases like Lugo, so the judge's finding that it was virtually impossible for Mr. Nailing was proper, and I would, I would argue that if the court feels it's necessary to reach this issue in terms of the Supreme Court rule, the availability of a notary, I think that there's a, there's a serious question of the due process right of access to the courts if there's a rule a prisoner has to follow to get his pleading in the court, but the prison will not allow him to follow that rule because they're not providing what is needed despite, despite his prior request for that, so I would argue that this court does have jurisdiction. Just so I'm clear, was there a testimony that he requested a notary? He, he had requested notaries in the past, the evidence showed, and had been denied. He agreed to that, and the prison's response was we don't have to give you a notary. That's our policy, and there was a direct question to the DOC paralegal about that time period, and, and the question was so he would not have been provided a notary at this time, and the response was that's correct. So I don't think there's any uncertainty about what happened in the prison, and I think that's why the judge made the finding that he made. So, I guess I, I, I have to speak to, again, a question of a timely mailing of a pro se document on the first issue in, in my brief, which is the judge's finding, this is Judge Borden again, two years earlier, three years earlier, and, and in this argument, I have to argue that the judge was in error, when he found that the original petition was untimely, and the reason that I say this is that the, the record shows that when the, the state raised this point in their response to, well, I'm sorry, it goes back beyond that. I'm sorry, the procedural history is, is, is very complicated, and I've also only recently really come to understand the prison mail system, and I hope you'll bear with me while I try to explain this. In 2000, the, the question here is, was the original petition mailed from the prison in November or December of 2004, which would have made it timely, or was it not mailed until March of 2005, which would have made it untimely? Now, this, the state, the state argued, I, I, the, the first thing that happened was in 2005, Judge, Judge Shadid had received the petition, and he had made a, a first stage finding that it was, that it was without merit, and he also found that it was untimely. And Mr. Wells then filed a motion to reconsider that ruling, and in that motion, he attached a document from, that the prison provides when inmates are requesting that money be taken from their account to pay for postage, for mailing legal documents. And that, this, that, that document is called a P-96. I'm not sure why it's called a P-96, but it, it's an, it's an authorization for, for, for payment. And, and there's a copy of, of, of, of the, of the document he filed back in 2007 on the, on the remand, on the motion to reconsider. That, that's in, that's one of the exhibits in the, in the supplemental record from the remand. But. That exhibit doesn't show that postage was paid, but only that he requested postage. That, that's correct. Yeah, this is something that the inmate fills out. But the significance of it is that the institution affixes a number to the offender authorization for payment. It's a six-digit number. And that number corresponds to the, what is called the Correctional Center Trust Fund, an inmate transaction statement. So one can look at the number on the P-96. Do you have that form in front of you? It's found in the record. It's C-303. 303 is the P-96. And I'm wondering, well, I don't see P-98. Yeah, I don't see it on, on this one either. I see DC-828 on the bottom left-hand corner, but I'm wondering if the ID number is P-10344. And is that. That's, that's his, that's Mr. Wells' registered number. That's his inmate number. Right, that's his inmate number. But there, there should be, is there a number 4028. 402852. Okay. All right. That corresponds. All right. Now, that corresponds to a document which I, I, I have to admit I don't know if it's in the record or not. But there is a document that I have a copy of from, from Pontiac. And, and the 402852 corresponds, relates to a December 04 legal postage deduction of money from Mr. Wells' account. Was that amount $6.16? Yes. Yes. All right. So that is, that is in the record. No. Okay. We're calling the 96 requested $6.16. All right. And, and that, to me, from what I have learned about how this system works, shows that this document, which I believe he labeled as, you know, he said it was for a post-conviction file, that, that that was mailed in December of 04, which would have made it timely. Now, now, he, he, he, he brought this to the attention of, of Judge Borden when there was a hearing on the motion to dismiss in July of 07. It's at the supplemental record on 93. That's very good too. Thank you. And there he says, you know, I have this P96. It shows a request for payment of postage. The judge is sort of confused. And Mr. Wells is representing himself. He doesn't do that good a job of explaining it. But basically, that is what I believe an evidentiary hearing on the, I believe an evidentiary hearing on the question of the timeliness of the original petition. This evidence would show that it was timely filed. The minute I have remaining, I'm going to say the other, the other matter that needs to be adjudicated at an evidentiary hearing, I believe, is the affidavit of Mrs. Wells, his co-defendant, who was a main state witness at trial. The post-conviction petition contains her affidavit stating, I was pressured into testifying falsely. I testified falsely. My actions resulted in the death of the, of the deceased here. I, I was acting in self-defense. That, that's a sworn affidavit. It has to be taken as true at this stage of the proceedings. The state, I don't believe, responded to it in their motion to dismiss. I don't believe Judge Borden addressed it in his order dismissing the petition. But it's, it's obviously a matter of credibility. Credibility determinations can't be made at, at that stage of the proceedings. And so there should also be an evidentiary hearing on that issue. And I, I thank you for your time. I have a question. Oh, certainly. Sorry. That's all right. Could this all have been avoided, the, the examination of this P96 form? And there's another page from the record that I think might be important in that. It's found at C573. Couldn't it all have been avoided if the defendant had simply attached a proof of service to the post-conviction petition showing it was served? Yes, yes, yes. So was Judge Borden in error in not going beyond the lack of proof of service attached to the document? Yes, because again, and this came out at the, at the remand hearing. In 04, fall of 04, the policy was no notaries for documents like this. And that, that was testified to at, at the hearing on remand. That they, they weren't providing notaries. They believed that an affirmation or an affidavit of affirmation was all that was needed. And then the other page of the record is C573. And I'm going to ask our bailiff to provide one to Mr. Giminovich just for himself and one. Actually, I have one. Do you have that? Yes, I do. If you look. Yeah, I know. You can give him. I, I, and I, I believe that that, that this. If you look at the mail directed to Robert Spears. Yes. There is mail on March 10th showing four things were sent out. But after listening, and, and I understand that's the duplicate post-conviction petition. Right. And it is in the file and it's a duplicate copy. It's not the original. But if you look up, there's also a date of December 10th, 04. Yes. And I believe that's when the original petition was mailed. I think that is what an examination of all of this would show. And it would probably require more testimony from people at the DOC. I mean, assuming that the state is not willing to agree that that's what happened. So, I think there has to be an evidence. Judge Gordon also reached the merits. Yes. Of certain claims. Yes. As I have stated, I don't believe that he even addressed the claim about the co-defendant's affidavit. Oh. Thank you. Thank you. Thank you, Mr. Chico. Mr. Gennari. May it please the court, counsel. When the defendant asked this court for a remand to address the matter of court jurisdiction, I objected. Not because of the fact that I'm trying to take and prevent the defendant from having his day in court or anything like that. Okay. It's just that we have a rule. Rule 12B3. Pretty simple. Pretty easy to follow. Just a piece of paper indicating time and place of mailing, indicating postage has been affixed, indicating the address that the document has been sent to. Okay. A lot has been done. A lot has been said. Hearing has been held all about DOC mailing policy, all about motorization policy, et cetera, et cetera. And when you look at the issue concerning the first one that I raised, as well as the untimeliness of the petition itself, all of these issues could have been easily avoided by the defendant simply attaching that piece of paper. Piece of paper, by the way, which he has attached to many, many, many other documents that he has filed. As I've pointed out in my brief. Now, the fact that he couldn't get it notarized, all right, yes, the rule says it should be notarized. He has no control over what DOC does and the decisions that they make. Right, wrong, intelligent or stupid, however you want to take it and label it, makes no difference to me. The point is, he still nonetheless could have prepared that document. And if the fact that it wasn't notarized, really probably in the grand scheme of things before the court, probably would have precluded any kind of argument as to what he did. But now we get into, well, we have the document that has all the dates that are listed. We have 12-10. Well, did he mail something 12-10? Sure he did. What was it? Do we really know what it was? He says it was his PC, but do we really know? His PC doesn't have anything attached to it that indicates that. Notarized or otherwise. Notarized or otherwise. There's no effort to prepare it for that service. Right, so we don't know. Well, then wouldn't within a day or two after 12-10 something had showed up in the circuit clerk's office and been stamped? Sure. Where did it go? What was mailed? What was it? And the thing is, defendant, with respect to the untimeliness argument that I made, defendant makes the assertion that my claim that his PC was timely filed was positively recorded by the record. Defendant claims I attribute too much significance to certain items in the record. Well, that's all I have to work with are the items that are in the record. And what the defendant didn't do speaks louder than that of what he did do. And we have so many conflicts, how do we resolve those? And from a practical point of view, in situations like this, is this court going to take and remand case after case after case after case to try to find out when a defendant filed something in the prison system, when he did it, how he did it, the postage and everything else? That's why we have Rule 12b-3. And that's the reason why the Supreme Court, if you take a look, I think it's 373, talks about filings in the reviewing courts. They took out the aspect in the rule concerning the postmark affixed. The mailbox rule still exists. It still exists with the prison system. But the Supreme Court took it out of that. And they put everything, made it nice and simple in 12b-3. And that's what you refer to, and that's what Lugo says. Are you saying that 12b-3 excludes the mailbox rule? Oh, I don't think it excludes the mailbox rule. But what I think it did is, rather than fighting over the date that it's affixed to something, in other words, take a look at this example that we have here. When was the postmark affixed to the document? September 13th, a day late. Now, if we just go off the date that it was affixed on that, he's late. Rather than have to send the case back and do everything that they did here, all the defendant had to do was file this piece of paper. And on that piece of paper, under 12b-3, that would have said, I place it in the mail on this date. The fact that the postmark was affixed a day late wouldn't make any difference. What's your standard review from the trial court's point of view? I would say the standard review would be an abuse of discretion, or manifest error probably, I guess. It's just not so much abuse of discretion. But in this particular case, I think that it is. Like I say, and I know I repeat myself constantly, but 12b-3 is simple. And whether or not it was notarized or not, and its effectiveness, is not really before the court. But we would at least know that he made the effort. We would at least know that it was on that date. And then if you take into account the fact that they weren't providing notaries, I would say at that point, that proof of service would be just fine. And that proof of service, if he had done it, would have shown he placed it in the mail on the 12th, would be no problem. Did the trial court make a finding with regard to the filing date of the post-conviction petition? I know he made a finding with regard to the motion to reconsider. And that's what was discussed. Right. And that is the key date. The key date for the court's jurisdiction was the date of the filing of that motion to reconsider. But with regard to the date of the filing of the post-conviction petition being endowed because of lack of notarization, that issue was not presented on the remand hearing. No, that issue was not addressed. Right. It was just the court's jurisdiction with regard to the motion to reconsider by the court trial court. Right. That's all that was addressed. But, again, the same situation becomes apparent with the PC itself because, again, there's nothing there. He claims he filed it in December or November or whatever date it was, and yet there's nothing there. And it's not until after his time has run, which is clearly late and the defendant recognizes that as well, that we get this. But if we had had ‑‑ if he had prepared the 12E3 notice and if he would have said, hey, look, I already sent this out, and here, look, I have a copy of my 12E3 notice back in November or December or whenever it was that shows that I did it. Where it went, he doesn't know. And we would at least know that at that date that document was filed or at least was mailed out to be filed. So I think, and again, I think it's nice to take and understand the prison mail system, but I think for the most part, it's all irrelevant. 12E3 controls. He didn't do it. And the fact that we really don't know what he sent out, when he sent it out, other than what he said, and he hasn't followed the rule, that's very simple. What would be wrong with getting the prison librarian's testimony? Now, with respect to what? To the original petition, when it was filed. He says that would help. He says that would help. But first of all, and I'm not trying to evade your question, but I want to take a step back with respect to his motion to reconsider. I looked at my notes, and even though there was one librarian staff who would accept mail from inmates who worked in the library, there's no indication that she could indicate or she could actually say, I actually received this document from him and I put it in the mail. So my point is, if we go back to what your question was, the fact that a librarian might accept mail, you're not going to get anybody who's going to be able to testify, oh yeah, he gave me this document to mail on this date. And that's the point. The fact that the librarian accepts mail doesn't necessarily mean that she accepted that particular piece of mail on that particular day from him. And nobody else, other than that one person, nobody else in the library staff accepts mail from inmates, whether they worked there or not. But why not? Why not find out? The more time that passes, obviously, the more memory fades. That is true, but at the same time, again, I guess let me answer your question by asking this. What about the rule? Rhetorically. Rhetorically. With all due respect, et cetera. What about the rule? I mean, we have a rule that says what they're supposed to do. The fact that we have a question, when the inmate doesn't follow the rule, does that mean that this court is going to remand every case to take and try to find out exactly what happened? What happens to the rule? What happens to the rule of law? And I understand, and that's why I prefaced this when I said my purpose here is not to take and prevent the defendant from having his day in court.  We have rules that are set out to make things as easy as possible for everybody to avoid exactly what's happening here. And is this court going to take and, I don't want to say ignore the rule, but say the rule's here and when it's complied, fine, but when it's not, we're going to send things back and try to find out exactly what happened. Try to take and pick memories and take and see, and the most you're going to get is, well, I do, but I'm not really sure. Then what do we do? We're none the better off in that situation than we are now. We really don't know. And all we needed was a piece of paper, notarized or not. And that's about how I can really answer your question, Judge, because like I said, what you say is true, okay? It would be nice, but we have rules. And I basically am not one that's going to take and concede that that is a course of action that this court should take in those cases where this piece of paper, this document is not attached. I think it's clear. I think that Lugo and another case, Talanchia or something like that, on the first district, basically what they said is what they'd help. If you don't have that, you don't have that proof that you haven't satisfied your obligation and therefore your case is dismissed. With regard to our decision to remand for a hearing that you objected to, the court's jurisdiction with regard to the motion to reconsider, if you're with me- I think I got to go. If you're with me that far, didn't the defendant file a proof of service with that motion to reconsider? And I think it's at C-294. It could be. So we had a proof of service that we looked at without notarization. And we just sent it back for the trial court to take some testimony. But the situation that Justice Litton is discussing is Judge Borden did not have a proof of service. Notarized or unnotarized, to take additional testimony on, to decide whether- True. But the thing that I'm seeing is the fact that the remand would be for what purpose? To have a hearing to determine whether or not he filed a document on December 10th of 04. Well, I'm interested in being consistent. And we did allow a remand for additional testimony regarding whether the proof of service that was attached to the motion to reconsider was accurate, even though it wasn't notarized. Well, the motion- And so not to remand. Was the motion- Was the- On the- And I'm not sure if it was the PC or if it was the motion to reconsider. There was the stamp that was on there that was dated. But it was dated months before the document itself was ever even filed. I don't know if that's the one you're speaking of or not. Okay? The thing is, with respect to- Which document were you referring to, Judge? Again? The remand for- Justice Litton's question was addressed to Judge Borden's decision on the post-conviction- Right, okay. Not to take additional evidence to decide whether it had been mailed. Whether it had been time to file. Correct. Okay. Sometime before. I think the date is February 27th, 2005. Right. The thing is this. Okay? Thank you. The thing is this. That goes back to even sending back the case to determine the evidentiary hearing on whether or not the motion to reconsider had been timely filed. My whole point is, is the fact that the motion to reconsider didn't need to be remanded. This doesn't need to be remanded simply because 12b-3 was not compliant with. Okay. Then my question to you is, although you disagreed with this court's decision to remand, can we now deny a remand and be consistent? I would say yes. And, again, with all due respect to the court, the reason why it would be consistent is because you erred originally. Now, if that's not bootstrapping, I don't know what is. I understand your point. Okay. In the last minute or so that I have, I would just like to make two very quick statements with respect to the perjury and the ex parte communication. With respect to the ex parte communication, these are the substance of the allegations, the reason why it does not state a constitutional issue is because the defendant was in prejudice. And I realize this court's decision in People v. Johnson all too well, because that was my case. With respect to ex parte communications, the thing is, that case currently is pending before the Illinois Supreme Court, waiting a decision. It is on the advisement docket on that particular issue of ex parte. The point is, the law has evolved to the point where ex parte only becomes error when it's a private defendant of a fundamental right. The question in the case that was asked by the jury was, give us an expanded definition of robbery. They had already gotten the IPI definition of robbery in the instructions. The judge simply said, you have all the instructions. The reason that makes this harmless, if you will, is the fact that the defendant was not only charged with felony murder. He was charged with intentional murder. He was charged with strong probability murder. He was convicted on all three. May I finish, please? Thank you. The only thing, because he was convicted of all three, the judgment was entered on all three. What happens is, any one of those murder convictions is valid to sustain his conviction for murder as well as his sentence. Therefore, the fact that the jury asked for robbery doesn't make any difference. If he was convicted, he was convicted of intentional murder, robbery doesn't make any difference. So the fact that they asked for an expanded definition of robbery, et cetera, the most that the defendant can say they should have gotten would have been the instructions, the issues instructions as to what is required of each one. That wouldn't necessarily have helped, simply because that's nothing more than a repeat of the definition. Thank you very much. Thank you, Mr. Bannon. Mr. Shego? If I'm pronouncing that name correctly, am I not? Yes. Thank you. Well, I have to say, I admire Mr. Genovich's candor, even though I disagree with his analysis. Because I don't think this court did anything wrong in remanding the matter initially. I think that the prison policy is something that Mr. Genovich has not addressed, and I think Judge Borden considered it. I think the dissenting justice in the Lugo case, Justice McLaren, made very cogent points about Rule 12b-3 not having eliminated other forms of proof as to an inmate being able to access the courts. Can I just ask a question? Sure. I'm sorry. Didn't mean to startle you. On Lugo, do we know, was there a PLA? There's a nine. I was hoping that it would be taken, but it was not. So I guess I'm requesting, I don't want to be requesting a split in the districts. But I don't think you have to reach the Lugo issue, because there's proof here that it was timely mail. And the fact that it had a postmark of September 13th proved that it had to be put in the prison mail at least a day before. Four witnesses testified to that, and the state never disputed it. You're talking about the motion to release? Right, yes. And now let me get to the PC itself. Judge Borden asked Mr. Wells in this July 07 hearing on the PC if he had anything other than his word to show that he had placed this original petition in the mail in November, December, whenever. Would have made it timely. And Mr. Wells said, Officer Troyer is here. He was back. He was representing himself. He's back on a writ from Pontiac for this hearing, and he's got his boxes of legal material, and there's an officer with him. And he says, Officer Troyer could speak to the prison mail system. The judge's response to that was to say, I'm not taking evidence today. And so there was no testimony about the matters that would be resolved by a hearing where the P-96 form would be compared to the inmate trust fund that's maintained by the institution. The numbers match. They would show that document that said, this is my post-conviction petition. I want postage to mail it, that that's what happened. And Mr. Genitovic says, well, Mr. Wells has nothing to go back on the remit. He does have evidence. He's got these documents. He's got these numbers that match the request for payment with something being mailed a week later. And he would also have the testimony of the people who testified at the remand hearing as to what that means. And it would show I submitted a timely mailing of the original petition. Now, what he's, what Mr. Genitovic is relying on in terms of the record and what I said in my reply brief that you can't put all the emphasis on that, is that the mailing in March of the copy of the petition, which was considered, that is what he relies on to say, well, it was mailed late. But that gives no consideration to Mr. Wells' statement that he mailed it in November, he put it in the mail in November. I would point out that the petition itself has a notarized signature of his dated November 12th. Yeah, November 24th. It was mailed. No, I agree. No, it doesn't. He would have to show that with the form requesting payment corresponding to the institutional form showing that postage was paid to mail. Can you agree that when Judge Borden said to the defendant during the hearing on the post-conviction petition, the second stage hearing, when he said to the defendant, do you have anything other than your word? If the defendant had said, I have this certificate of service that is not notarized, but that I filed in the court, and it's also dated November 24th, would that have improved his position to insist on a witness testifying? Well, if, I'm sorry, would it have improved his position to have a witness testify? To insist that a witness should testify. Well, yes, but the judge made it clear he wasn't going to hear any testimony. Just if I could speak briefly to the prejudice on the third issue regarding the note not being disclosed to the jury. I am aware that the Supreme Court has taken the Johnson case, which is what I relied on in my brief. But I believe that their focus in that case is whether or not the issue is defaulted. Because, as I understand it, in that case, the trial judge did tell the parties at some point that he had gotten this note and had responded. And there was no post-trial motion filed. So the argument in the Supreme Court really was going to turn around, was this waived or not, as opposed to whether it was prejudicial. And I think just the last point I need to make is, with regard to the prejudice, I'm aware that he was convicted on all three theories of murder. But the only verdict that was accepted, the only verdict on which judgment was entered, was the felony murder. And the reason that that was done, or the prejudice from that, is that it was the basis for the judge imposing a life sentence. Because the intentional murder and the knowing murder by themselves would not support imposition of a natural life sentence. There had to be a finding that the murder occurred in the course of a felony. And that's, if you look at the sentencing proceedings, that's what the judge relied on to impose a natural life sentence. So there's certainly prejudice from that. Thank you very much. Thank you, Mr. Shill. And thank you, Mr. Commander, for your arguments today. We will take this matter under advisement and get back to you with a written disposition within a short time.